This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Mac Perkins appeals from a decision of the Medina County Court of Common Pleas, Domestic Relations Division, granting appellee Myra Perkins relief from judgment originally rendered in a divorce decree terminating the parties' marriage.
 I.
On April 20, 1998, Myra Perkins filed a complaint for divorce, seeking the termination of her twenty-four-year marriage to Mac Perkins. On September 1, 1999, the trial court entered a decree of divorce. In pertinent part, the trial court determined that each party had retirement funds, the marital portion of which was approximately equal in value. The divorce decree ordered that Myra would keep her IRA retirement accounts and Mac would keep his pension funds.
At the divorce hearing on August 27, 1999, Myra presented a pension valuation expert who testified that he had determined the present value of the marital portion of Mac's pension based on a monthly retirement amount of $682.50 per month. This monthly figure was provided by Mac's pension plan administrator, Central States Southeast and Southwest Areas Pension Fund ("Central States"), in a letter to Mac's attorney on November 12, 1998. The letter stated that this monthly figure was based on "naming a November 30, 1998 retirement date."[1] At the divorce hearing, Mac testified that he was not currently working due to an injury, but that he anticipated returning to a less strenuous type of work in the indefinite future. Sometime after the divorce decree issued, Myra learned that Mac was receiving a pre-tax pension benefit of $1,020 per month.
Upon discovering the discrepancy in the monthly pension amounts, Myra filed a Civ.R. 60(B) motion for relief from judgment, and for attorney fees to pursue the motion. The Civ.R. 60(B) motion was based on newly discovered evidence not available at trial and fraudulent information from Mac. See Civ.R. 60(B)(2) and (3). The motion stated that Myra would "prove by clear and convincing evidence that the Defendant, Mac Perkins, committed fraud at trial, by testifying that he was not receiving his pension" and that Mac had provided false information about the amount of his monthly pension. In addition to the pension issue, Myra moved the court to reduce spousal support arrearages to a lump sum judgment, to be paid from the proceeds of the sale of the marital residence.
The trial court judge held a hearing on the motion. Mac testified that he applied for his pension on April 1, 1999, and he was told his pension would be $682.50 per month. Mac further testified that he did not receive any pension money until October 1999, when he was paid for the months May to October, 1999. A stub, originally attached to an October 7, 1999 pension check, indicated that the check was for May to October 1999, in an amount that equaled $1,020 per month before taxes. The pension valuation expert testified that with this monthly pension benefit, the marital portion of the pension value would be $113,193.23, rather than $78,202.44 as originally adjudicated. Mac had acknowledged that he was in arrears on the spousal support, because he had no money to pay the support.
On August 15, 2000, the judge granted the Civ.R. 60(B) motion and awarded Myra half of the attorney fees she requested. The Civ.R. 60(B) order read, "To equalize the [parties'] property division, [Myra] shall receive $17,449.39 in addition to all other sums she was to receive under this Court's Final Entry Order Granting Divorce of September 1, 1999."[2] The journal entry did not state the amount of Mac's arrearages. However, the trial court directed the parties' counsel to prepare a journal entry ordering the disbursement of the escrow funds, based on the property division of the original decree, the new pension equalization, attorney fees for Myra, and the spousal support arrearages. On September 11, 2000, the disbursement order was entered, interalia, awarding Myra $17,449.39 from the escrow funds to equalize the pension property.
On October 11, 2000, Mac filed the instant appeal. He assigns two errors for our review.
 II. FIRST ASSIGNMENT OF ERROR
The trial court erred in granting appellee's Motion for Relief From Judgment and Attorney Fees where appellant appeared at trial pro se, the parties stipulated to a pension valuation as of November 30, 1998[,] at trial said valuation was determined using information provided to the expert by the pension plan, and the expert had sufficient information to determine an increased pension value in the event of appellant's deferred claim for benefits.
Mac argues that at the divorce hearing, the parties stipulated to a pension valuation date of November 30, 1998; that the pension figure as of that date was provided by the Central States plan administrator, not Mac; and that the possibility of a later increase in the monthly pension was known to Myra's valuation expert.
Myra, in turn, argued to the trial court and to this court that Mac had lied at the initial divorce hearing, when he testified that he had not retired. Myra found out later that after October 7, 1999, Mac received a pension in an amount of $1,020 per month before taxes. Myra contends that Mac knew at the August 27, 1999 divorce hearing that he was already retired, that he would receive $1,020 rather than $682.50 a month, and that this constituted fraud. Specifically, Myra's Civ.R. 60(B) motion stated that Mac lied at the divorce hearing about not receiving any pension money.
To prevail on a motion for relief from judgment under Civ.R. 60(B),
 the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.
GTE Automatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. Myra's Civ.R. 60(B) motion was premised on newly discovered evidence of Mac's actual pension amount and the fraudulent information provided by Mac, especially in his testimony at the divorce hearing. Civ.R. 60(B)(2) and (3). However, a review of the record indicates that Myra's Civ.R. 60(B) motion was inappropriately granted.
First, at the divorce hearing Myra's attorney placed into the record the parties' stipulations to certain facts. One stipulation was that "[t]he pension evaluation was done for [Mac's] pension. This indicates a value of $78,202.44." The court asked Mac if he agreed to this fact, and Mac answered "Correct." There was no evidence that Mac, prior to entering into this stipulation, provided the monthly pension figure to Myra or her counsel. Myra's pension valuation expert then testified that he used the $682.50 per month pension figure provided by the plan administrator in the November 12, 1998 letter to arrive at this figure. The pension expert testified as to how he derived at the present value of the marital portion of Mac's pension. The expert explained that Mac is "currently receiving $8,190 [i.e. $682.50 per month] from Central States. That's his pension. His current age, from the report that we did, is fifty- seven years on the report, fifty-seven years of age."
The November 12, 1998 letter from Central States' plan administrator stated that Mac was qualified to receive "$682.50 per month based on naming a November 30, 1998 retirement date." The letter also stated that certain factors could change the monthly pension. First, if Mac made self-contributions by December 31, 1998, to make up for contributions not made in 1997 while he was disabled, he could increase his pension payment to $1,500 per month. Second, the letter stated that Mac didn't qualify for a certain benefit class because that class "does not allow a benefit at age 56.07 with 25 years of contributory credit. You must be age 57, to qualify for the $1,200.00 per month benefit, therefore [Mac's] benefit is based on the Early Retirement Pension chart [enclosed]."[3] Mac was born on April 24, 1942, and he turned 57 years old on April 24, 1999, less than six months after the valuation date of November 30, 1998 and more than four months before the divorce hearing. It is clear that the named retirement date of November 30, 1998, when Mac was only fifty-six, constituted an early retirement scenario with substantially reduced pension income. It is also clear from the letter that Mac "must be age 57, to qualify for the $1,200.00 per month benefit." Thus, by merely waiting to retire until he reached age 57 Mac would be entitled to an extra $517.50 per month in pension funds. At the divorce hearing, Myra's counsel did not ask whether Mac had retired before he turned fifty-seven.
Myra contends that at the divorce hearing Mac lied about the fact that he had not yet retired. However, the transcript indicates that besides the stipulation as to the pension amount, Mac spoke only two times concerning his retirement. Mac's first testimony came during cross-examination. It had already been established that Mac had been only partially employed in the previous few years due to a work injury, and was receiving workers compensation. Myra's counsel then questioned Mac as follows:
You planning on returning to work?
I hope to. When? I cannot answer that question.
* * *
 And you're hoping that your injury will clear up and in the future be able to get back to work?
 Not at [my current job], no. I would have to go into something where there's no lifting, you know, light duty.
Later Mac, acting as his own attorney, cross-examined Myra's pension valuation expert about the value of Myra's pension. During the questioning Mac himself stated, "I have not got one check from my pension." Mac did not say that he had not applied for his pension benefits.
At the divorce hearing, Myra stipulated to a present value of Mac's pension in the amount of $78,202.44, apparently based on the monthly figure of $682.50. There is nothing in the record to indicate that the stipulation was based on an understanding that the monthly figure was correct. Nor is there any evidence that the $682.50 figure came from Mac. The only source of the $682.50 figure was the letter from the Central States plan administrator. Furthermore, the Central States letter advised that $682.50 figure would be inaccurate if (1) Mac made extra self-contributions by December 31, 1998 or (2) if Mac did not retire until after he turned fifty-seven. Myra's counsel did not ask Mac if either of these events had occurred. Rather, counsel asked if Mac planned to return to work and Mac said he did. Mac did not state that he had not applied for retirement.
It appears that Myra believes that Mac's testimony amounts to a false statement that he had not applied for his pension money yet. At the hearing on the Civ.R. 60(B) motion, Mac testified that he applied for his pension benefits on April 1, 1999, and the Central States administrator advised Mac that his retirement would be $682.50 per month. Mac did not discover that the pension was $1,020 per month until after October 7, 1999, when he received his first pension check.
Even assuming, contrary to the record before us, that Mac essentially lied at the divorce hearing about not yet being retired, that fact was irrelevant. The only germane issue is whether Mac retired before turning fifty-seven. If Mac did not retire until he turned fifty-seven, and in point of fact he did not, then Myra, her counsel, and her expert knew that Mac would receive $1,020 per month[4] from his pension, which would alter the present value of Myra's marital interest in the pension. The fact that Myra stipulated to a lower figure, notwithstanding that she could easily ascertain whether Mac had retired before his fifty-seventh birthday, is no basis for a motion for relief from judgment.
The trial court erred in granting the Civ.R. 60(B) motion based on newly discovered information and/or fraud. The first assignment of error is well-taken and it is sustained.
 III. SECOND ASSIGNMENT OF ERROR
The trial court erred in ordering appellant to reimburse appellee for her attorney fees and costs incurred in the post-decree motions in the absence of any evidence that appellant misrepresented any facts or caused any valuation to be understated, and in the absence of any testimony pursuant to [R.C.] 3105.18(H) and DR 2-106(B).
The second assignment of error challenges the lack of any basis for awarding attorney fees or for the reasonableness of the fees awarded. Because we have determined that Myra was not entitled to relief from judgment, the award of attorney fees to Myra was inappropriate. The second assignment of error is well-taken, and it is sustained.
 IV.
We have sustained both assignments of error. We vacate the trial court's order granting relief from judgment and awarding attorney fees, and the portion of the order of distribution of the marital assets that awards Myra extra money to equalize the parties' pension funds and for attorney fees. We remand the cause to the trial court for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ____________________________ WILLIAM R. BAIRD
BATCHELDER, P.J., SLABY, J. CONCUR.
[1] There is nothing in the record to establish why this date was named. In fact, the trial court determined that the duration of the marriage would be from the date of the wedding, February 4, 1974, to the date of the divorce hearing, August 27, 1999.
[2] The original decree ordered the marital home to be sold, and the money divided according to the terms of the divorce decree.
[3] When Mac did begin to collect his pension, he was paid only $1,020.00 per month, rather than $1,200.00 per month. This was due to the fact that Myra was still named as an alternate payee on the plan, which was subject to an election of the "Joint and 50% Surviving Spouse Annuity" from the fund, according to a May 11, 2000 letter from Central States to Myra's pension evaluator. Myra was still named a beneficiary after the divorce, because Mac had never filed a court order to establish that Myra no longer was entitled to benefits after the divorce. The Central States letter clarified that if Myra waived her benefit, or a proper court order was filed, Mac's monthly pension would increase to $1,200.00 per month.
[4] I.e., the $1,200.00 per month figure, adjusted for the cost of the joint and survivor annuity.